24 F.3d 252
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony John SPOSATO, Defendant-Appellant.
 No. 92-56206.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 7, 1994.*
Decided May 12, 1994.
 
 Before: BROWNING, PREGERSON, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Anthony John Sposato appeals pro se the District Court's summary dismissal of his 28 U.S.C. Sec. 2255 motion to vacate, set aside, or correct his sentence. Sposato was convicted and sentenced to 121 months in prison for distributing 992 grams of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). In this collateral appeal Sposato contends that his trial counsel was ineffective and that the Government failed to disclose evidence that it used at trial. We have jurisdiction pursuant to 28 U.S.C. Secs. 2255 and 1291. We affirm.
 
 STATEMENT OF THE CASE
 
 3
 In 1988, as part of an investigation into cocaine trafficking occurring in various Los Angeles restaurants, the FBI sent confidential informant Richard Puccio into the Money Tree restaurant in Los Angeles to ascertain whether drugs were being sold there. Puccio, with whom Sposato had been acquainted ten years earlier in New York, met with Sposato, the owner of the Money Tree, several times during the early summer of 1988. During an early conversation, Sposato asked Puccio if he was interested in purchasing drugs, and if so, in what quantity would he want them. Sposato later acknowledged that he was a drug dealer and told Puccio about other drug sales in which he had been involved.
 
 
 4
 During a conversation at the restaurant, Sposato told Puccio that Sposato could put together a five "piece" (kilogram) drug purchase in five one-kilogram packages worth $20,000 each. Puccio and undercover FBI Agent Hamer arrived at the restaurant on July 18, 1988 to receive the drugs. Sposato informed them that there would be a one-day delay in delivery. Although Puccio offered to delay the deal and return to the east coast, Sposato insisted that they complete the transaction.
 
 
 5
 The following day Puccio and FBI Agent Hamer returned to the Money Tree, and met Sposato in the parking lot. As the agent watched from the car, Sposato gave Puccio a bag containing one kilogram of cocaine. The next day, Sposato telephoned Puccio and attempted to sell him the remaining four kilograms for $80,000. Agent Hamer told Puccio that the FBI did not want to purchase more cocaine, so Puccio telephoned Sposato and attempted to "back out as best he could." In response to Sposato's protests, Puccio stated that he would talk to his source again about the deal. The FBI never completed the transaction. Sposato was not immediately arrested after the single kilogram purchase because the larger investigation (of which Sposato was a small part) continued.
 
 
 6
 In September of 1989, the following year, Sposato contacted Puccio and arranged to introduce Puccio to a new cocaine supplier. Sposato then made arrangements for Puccio, Agent Hamer, and the supplier to meet in a hotel room while Sposato waited in the hotel parking lot. The deal was never consummated due to a conflict over "fronting" money. Sposato was not criminally charged for his participation in this transaction.[1]
 
 
 7
 Sposato was eventually indicted, however, for his participation in the July 1988 transaction. The indictment charged Sposato with a single count of distributing 992 grams of cocaine. After arrest and advisement of his Miranda rights, Sposato signed a waiver form. Sposato admitted selling the cocaine to Agent Hamer and stated, "[i]f selling ... a kilo of coke makes me a dope dealer, I guess I am."
 
 
 8
 Before trial, Sposato's defense counsel twice requested continuances, which the District Court granted. On December 12, 1989, the day trial was scheduled to begin, defense counsel again requested a continuance because he had allegedly mistakenly noted the date of trial as December 19th. The District Court denied the request and began the trial that day.
 
 
 9
 Before trial commenced, Sposato objected to the Government's submitted transcripts of taped recordings between Sposato and Puccio, and requested time to prepare a new transcript of the tapes which would further delete vulgar language and certain criminal behavior by Sposato. The Government responded that it had already redacted the transcripts per Sposato's earlier request. The District Court gave Sposato the option of introducing either all of the tape recorded conversations and the original transcripts or the already redacted transcripts. Defense counsel chose to use the latter.
 
 
 10
 Following the jury trial on December 12 and 13, 1989, Anthony Sposato was convicted of distribution of 992 grams of cocaine in violation of 21 U.S.C. 841(a)(1). Sposato was sentenced to 121 months imprisonment to be followed by five years of supervised release. Sposato appealed his conviction based on alleged errors at trial, and appealed his sentence based on alleged errors in sentence computation. On April 2, 1992, we rejected his contentions and affirmed his conviction and sentence.
 
 
 11
 Sposato then filed a motion under 28 U.S.C. Sec. 2255 alleging ineffective assistance of counsel based on various acts and omissions by his defense counsel and failure of the Government to disclose evidence relating to Sposato's entrapment claim. The District Court denied Sposato's motion without an evidentiary hearing on August 26, 1992. The District Court stated that Sposato's assertions were raised "in the broadest terms," and found that Sposato's claims were known to him when he filed his first appeal, which had been decided against him.
 
 ANALYSIS
 
 12
 We review the District Court's denial of a motion under 28 U.S.C. Sec. 2255 de novo. United States v. Garfield, 987 F.2d 1424, 1426 (9th Cir.1993). Further, whether a defendant received ineffective assistance of counsel is a legal question reviewed de novo. United States v. Swanson, 943 F.2d 1070, 1072 (9th Cir.1991). A defendant claiming ineffective assistance of counsel must demonstrate that (1) counsel's actions were "outside the wide range of professionally competent assistance," and (2) the defendant was prejudiced by reason of counsel's acts or omissions. Strickland v. Washington, 466 U.S. 668, 687-90 (1984). This means that the defendant must demonstrate a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. Id.
 
 
 13
 Finally, the District Court's findings of fact are reviewed under the clearly erroneous standard. United States v. Garcia, 997 F.2d 1273, 1283 (9th Cir.1993). Whether the facts suffice to establish that the performance and prejudice standards have been met is a question reviewed de novo. United States v. Layton, 855 F.2d 1388, 1416 (9th Cir.1988), cert. denied, 489 U.S. 1046 (1989).
 
 
 14
 Sposato asserts that the District Court erroneously denied his motion to vacate, set aside, or correct his sentence under 28 U.S.C. Sec. 2255 without an evidentiary hearing. When such a motion has been made, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to relief, the court shall ... grant a prompt hearing thereon." 28 U.S.C. Sec. 2255.
 
 
 15
 The applicable standard is whether "the movant has made specific factual allegations that, if true, state a claim on which relief could be granted. United States v. Schaflander, 743 F.2d 714, 717 (9th Cir.1984) (citing United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir.1980), cert. denied, 451 U.S. 938 (1981)). Thus, a "hearing must be granted unless the movant's allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." Schaflander, 743 F.2d at 717. This does not mean, however, that the District Court is required to identify the specific grounds for rejecting the hearing. Shah v. United States, 878 F.2d 1156, 1160 (9th Cir.), cert. denied, 493 U.S. 869 (1989). So long as it "plainly appears from the face of the motion and any annexed exhibits and the prior proceedings ... that the movant is not entitled to relief ... the judge shall make an order for its summary dismissal...." Rule 4(b) of the Rules Governing Section 2255 Proceedings.
 
 
 16
 Sposato asserts a variety of grounds to support a finding of ineffective assistance of counsel, including his counsel's failure to: be prepared to go to trial, call defense witnesses, subpoena the witnesses for the correct date, challenge or investigate certain of Sposato's statements to the FBI, consult with him before trial about the case, impeach the confidential informant Puccio, and let Sposato review the incriminating tape recordings of discussions between himself and Puccio.
 
 
 17
 The Government asserts that Sposato's claims present merely conclusory allegations which, when viewed against the record, are "so palpably incredible or patently frivolous" that the District Court properly summarily dismissed the case. Schaflander, 743 F.2d at 717. Further, the Government points out that the district court judge properly denied the evidentiary hearing because the judge had presided over the trial and was familiar with the records and witnesses in the case.
 
 
 18
 To be granted an evidentiary hearing on these various claims of ineffective assistance of counsel, Sposato needed to make allegations which, if true, would entitle him to relief. He has failed to do so. Our review of the district court record leads us to the conclusion that all but one of Sposato's contentions would not pass the first prong of the Strickland test (that Sposato's counsel's actions were not professionally competent). Incompetence is shown if, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Thus, underlying our review is a "strong presumption that counsel's conduct fell within the wide range of reasonable representation." United States v. Ferreira-Alameda, 815 F.2d 1251, 1253 (9th Cir.1987).
 
 
 19
 During trial, Sposato's counsel vehemently argued, and Sposato himself testified, that the FBI and the paid government informant Puccio had entrapped Sposato. Defense counsel attempted to impeach Puccio's credibility during cross-examination by revealing Puccio's prior criminal record. Further, Sposato called as a witness a former Money Tree restaurant bar manager, who offered testimony which supported Sposato's own testimony. In addition, during cross-examination of the FBI special agent, defense counsel established that Sposato's statement about being a "dope dealer" to Agent Hamer was not tape recorded. Where the attorney's tactical choices are reasonable, we need not determine the actual explanation for the attorney's actions. See Morris v. State of California, 966 F.2d 448, 456-57 (9th Cir.1992). On the record before us, we do not find that the tactical decisions made by Sposato's attorney qualify as ineffective assistance, or that Sposato's attorney generally failed to try the case with a reasonable level of competence.
 
 
 20
 But, there is one instance of Sposato's counsel's conduct which does appear to amount to professional irresponsibility. The trial transcript indicates that Sposato's counsel failed to appear in court on the morning of trial. This scheduling error was presumably either a serious breach of professional responsibility to diligently and zealously represent a client or a breach of professional responsibility by engaging in a dangerous tactical game to create issues for appeal (as the Government suggests). Whatever the scenario, not only did defense counsel not show up in court on December 12th (the morning of trial), he subpoenaed witnesses for December 19th and instructed Sposato to appear on December 19th. (Sposato's failure to appear resulted in the District Court's issuing a bench warrant for his arrest.)
 
 
 21
 Although this conduct arguably satisfies the first prong of Strickland, because of the overwhelming evidence presented at trial against Sposato, he has not demonstrated that this error so prejudiced his defense that there is a reasonable probability that the jury would have reached a different verdict absent this error. Sposato's counsel was appointed on October 4, 1988. The actual trial did not begin until December 12, 1989. Defense counsel reserved his opening statement until the close of the Government's case, which allowed him additional time to prepare. On cross-examination Sposato admitted that he had sold the cocaine to Puccio. He further admitted that he had the opportunity to review and discuss, with his attorney, the tapes and transcripts which were offered against him. In addition, Sposato has not indicated which witnesses might have testified had the trial occurred later, or what exculpatory evidence or testimony might have been presented during a later trial. Thus, we also must reject this incident as a basis to support a finding of ineffective assistance of counsel.
 
 
 22
 Finally, Sposato also alleges that the Government failed to disclose evidence which it intended to use at trial that Sposato contends would have supported his assertion of entrapment. Since it appears from the record that Sposato failed to raise this issue in his direct appeal, he cannot raise it now.
 
 
 23
 Section 2255 is not intended to provide criminal defendants multiple opportunities to challenge their sentence. United States v. Johnson, 988 F.2d 941, 945 (9th Cir.1993). If a criminal defendant could have raised the issue on direct appeal but failed to do so, he must demonstrate both cause and prejudice for his procedural default. United States v. Frady, 456 U.S. 152, 168 (1982). Sposato has made no showing of good cause for not raising this issue in his direct appeal.
 
 
 24
 Moreover, the District Court found that this claim was known to Sposato at the time of his direct appeal. This finding does not appear erroneous. Sposato has not offered any facts to show that he became aware of new facts after his appeal which would support his contention of improper conduct by the Government. Thus, the District Court's ruling as to this contention also appears proper. AFFIRMED.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The information concerning this transaction was not presented in the Government's case-in-chief. Rather, it was first raised during cross-examination of Sposato during Sposato's presentation of his case. The information was used for impeachment purposes in response to Sposato's statement on direct examination that he had not participated in drug transactions before or after the time period charged in the indictment